**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Galva-Foam Marine Industries, Inc., a Missouri corporation;<br><br>        Petitioner,<br><br>vs.<br><br>Antelope Point Holdings, LLC, an Arizona limited liability company,<br><br>        Respondent. | No. CV 08-1259-PHX-NVW<br><br>**ORDER** |

Respondent Antelope Point Holdings LLC ("Antelope") operates a luxury marina at Lake Powell in Arizona. In 2002, Antelope entered into a contract with Petitioner Galva-Foam Marine Industries Inc. ("Galva-Foam") regarding a dock system for the marina. A dispute has arisen concerning the nature and extent of the parties' obligations under the contract. Galva-Foam now petitions to compel arbitration of this dispute under the Federal Arbitration Act, 9 U.S.C. § 4.

The contract contains a section entitled "Conflict Provisions." This section reads in part as follows:

> A) <u>Mediation:</u> Any controversy or claim arising out of this agreement that cannot be resolved is subject to arbitration with an arbitrator of mutual agreement.
>
> B) <u>Attorney Fees:</u> If either party becomes involved in litigation arising out of this agreement, the court shall award cost [sic] /expenses including attorney fees to the party justly entitled to them.

Antelope admits that the contract contains these two provisions, but denies that these provisions require the court to compel arbitration.

The Federal Arbitration Act provides that in any written contract "evidencing a transaction involving commerce," an arbitration provision "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). If a valid agreement to arbitrate exists and the agreement covers the dispute at issue, "then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

The petition to compel arbitration stands on firm footing. Both parties agree that the contract contains the dispute resolution language. Both parties agree that this dispute arises out of the agreement. The only question presented for decision is whether the dispute resolution language mandates arbitration as a matter of contract interpretation. The plain language of the contract shows that it does.

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Comedy Club, Inc. v. Improv W. Assocs.*, 514 F.3d 833, 842 (9th Cir. 2007). Because the agreement in question specifies that Missouri law governs its interpretation, we apply the law of that state.[1]

---

[1] The court is mindful that "Section 2 [of the Federal Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, the policy favoring arbitration "does not disregard the intent of the contracting parties as evidenced by their agreement." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. 2005) (quoting *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 505 (8th Cir. 1999)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (stating that the Federal

1     Antelope contends that the heading "<u>Mediation</u>" conflicts with the language
2 concerning arbitration, and that the parties therefore did not agree to arbitration. This
3 heading is general, however, and the arbitration language is specific. Under Missouri
4 law, "language which deals with a specific situation prevails over more general
5 provisions if there is ambiguity or inconsistency between them." *A & L Holding Co. v. S.*
6 *Pac. Bank*, 34 S.W.3d 415, 419 (Mo. App. 2000). The plain language of the dispute
7 resolution provision mandates arbitration. *See id.* (favoring interpretations that give "a
8 reasonable meaning" to each phrase and clause of the contract). While the word
9 "mediation" in its technical sense connotes something different than arbitration, it is here
10 used in a lay sense, to refer to alternative dispute resolution generally. *See The Compact*
11 *Oxford English Dictionary* 545 (1991) (defining "mediation" to include "action as an
12 intermediary"); *State ex rel. Nat'l Life Ins. Co. v. Allen*, 256 S.W. 737, 739 (Mo. 1923)
13 (language may be inaccurate without being ambiguous); *Baker Smith Sheet Metal, Inc. v.*
14 *Building Erection Serv. Co.*, 49 S.W.3d 712, 716 (Mo. App. 2001) ("mere disagreements
15 as to construction" do not amount to ambiguity). The text of the provision merely
16 specifies what type of dispute resolution is intended.

17     Because the language is plain, there is no merit to Antelope's claim that the
18 contract is ambiguous and must therefore be construed against Galva-Foam, its drafter,
19 under *Triarch Indus., Inc. v. Crabtree*, 158 S.W. 3d 772, 776 (Mo. 2005). To the extent
20 that the meaning of "mediation" is in doubt, the arbitration language removes that doubt.
21 Neither party has presented any parol evidence to the contrary, and even if they had done
22 so, Missouri law forbids the court to "create an ambiguity by using extrinsic or parole
23 evidence." *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 368 (Mo.

---

Arbitration Act "places arbitration agreements on equal footing with all other contracts").
Whether the parties agreed to arbitration at all is a question of Missouri contract law. *State*
*ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. 2006); *cf. United Steelworkers of*
*Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960) (construing arbitration
agreement broadly when the existence of the arbitration agreement was not at issue).

App. 2008). In this case, it is clear that the parties intended for the "mediation" clause to provide for arbitration.

Similarly, to give effect to the arbitration language does not, as Antelope claims, rob the attorney fee provision of all force. As this very dispute shows, the arbitration clause does not foreclose all litigation warranting an award of attorney fees.

Therefore, the petition to compel arbitration will be granted. Under the terms of the contract, the parties will mutually agree upon the selection of an arbitrator to conduct the arbitration. If the parties are unable to reach agreement, the court will select an arbitrator pursuant to 9 U.S.C. § 5 upon the request of any party.

As provided in the contract, appropriate costs and attorney fees relating to this petition will be awarded to Galva-Foam and may be claimed as provided in Fed. R. Civ. P. 54 and LRCiv 54.

IT IS THEREFORE ORDERED that Petitioner Galva-Foam Marine Industries, Inc.'s petition to compel arbitration (doc. # 1) is granted.

IT IS FURTHER ORDERED that Respondent Antelope Point Holdings LLC is ordered to arbitrate in accordance with Contract No: 2930-2. If the parties have not agreed upon an arbitrator by October 10, 2008, any party may then apply to the Court to appoint an arbitrator.

Dated: September 9, 2008.

_____
Neil V. Wake
United States District Judge